Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/30/2023 08:06 AM CDT

BCL Properties, Inc., appellee, v. Shawna L. Boyle, appellant, and i3 bank, formerly known as Bank of Bennington, appellee.

___ N.W.2d ___

Filed June 30, 2023.    No. S-22-377.

1. **Judgments: Motions for New Trial: Words and Phrases: Appeal and Error.** An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

2. **Attorney Fees.** When an attorney fee is authorized by statute or a uniform practice and procedure, the amount of the fee is addressed to the discretion of the trial court.

3. ____. Whether a statute or a uniform course of procedure authorizes attorney fees presents a question of law.

4. **Prejudgment Interest: Appeal and Error.** Awards of prejudgment interest are reviewed de novo.

5. **Trial: Evidence.** A motion in limine is merely a procedural step by which a court makes a preliminary determination on the admissibility of evidence.

6. ____: ____. It is not the office of a motion in limine to obtain a final ruling on the ultimate admissibility of evidence.

7. **Trial: Evidence: Appeal and Error.** Because a ruling on a motion in limine is not a final ruling on admissibility, it does not present a question for appellate review.

8. **Trial: Evidence: Proof: Appeal and Error.** To be preserved for appellate review, the question of admissibility which was the subject of a motion in limine must be raised during trial by an appropriate objection or offer of proof.

9. **Courts: Juries.** The decision whether to reply to questions from the jury regarding the applicable law is entrusted to the discretion of the trial court.

10. **Courts: Juries: Jury Instructions.** It is generally not an abuse of judicial discretion to respond to a jury's questions by referring the jury to written instructions already given.

11. **Courts: Juries.** A court can, in the exercise of its discretion, refuse to reply to questions from the jury regarding the applicable law.

12. **Prejudgment Interest.** Neb. Rev. Stat. § 45-104 (Reissue 2021) applies to four types of judgments: (1) money due on any instrument in writing; (2) settlement of the account from the day the balance shall be agreed upon; (3) money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof; and (4) money loaned or due and withheld by unreasonable delay of payment.

13. **Contracts: Prejudgment Interest: Words and Phrases.** A construction contract is an instrument in writing on which money was due within the meaning of Neb. Rev. Stat. § 45-104 (Reissue 2021).

14. **Prejudgment Interest.** When a claim is of the types enumerated in Neb. Rev. Stat. § 45-104 (Reissue 2021), then prejudgment interest can be recovered without regard to whether the claim is liquidated.

15. **Attorney Fees.** Attorney fees may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

16. **Liens: Foreclosure: Damages: Attorney Fees.** Neb. Rev. Stat. § 52-157 (Reissue 2021) authorizes an award of damages, which may include attorney fees, if a person is wrongfully deprived of benefits to which he or she is entitled under the Nebraska Construction Lien Act. But § 52-157 does not authorize attorney fees in every action involving foreclosure of a construction lien, nor does it authorize an attorney fee award to every prevailing party in an action under the act.

17. **Contractors and Subcontractors: Liens: Foreclosure: Damages: Attorney Fees.** A contractor who has successfully foreclosed a construction lien and received all the benefits to which he or she is entitled under the Nebraska Construction Lien Act is not entitled to an award of damages or attorney fees under Neb. Rev. Stat. § 52-157 (Reissue 2021).

Appeal from the District Court for Douglas County: Todd O. Engleman, Judge. Affirmed in part, and in part vacated.

Brian T. McKernan and Lauren R. Goodman, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellant.

Cathy S. Trent-Vilim and Craig F. Martin, of Lamson, Dugan & Murray, L.L.P., for appellee BCL Properties, Inc.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

This is an action between a general contractor and a property owner over claims related to a residential construction project. The district court entered judgment in favor of the general contractor, including an award of prejudgment interest under Neb. Rev. Stat. § 45-104 (Reissue 2021) and an award of attorney fees under Neb. Rev. Stat. § 52-157 (Reissue 2021). The property owner appeals, primarily to challenge the award of prejudgment interest and attorney fees. For reasons we will explain, we vacate the award of attorney fees and otherwise affirm the judgment.

## I. BACKGROUND

Shawna L. Boyle hired BCL Properties, Inc. (BCL), to be the general contractor for a demolition, remodeling, and construction project on residential property in Omaha, Nebraska. The parties entered into a written contract for an original amount of $475,516.41. As the work progressed, Boyle made several payments and the parties made alterations to the scope of the work and the materials to be used. Based on these alterations, BCL requested additional amounts from Boyle. Boyle disputed the amounts due, and the parties' disagreements escalated. Eventually, BCL ceased work on the property.

In January 2019, BCL filed a construction lien in the amount of $194,037.75. BCL also emailed Boyle an invoice and a spreadsheet breaking down the work completed, the amounts paid, and the amount due. When Boyle failed to pay the invoice, BCL filed this action in the district court for Douglas County.

BCL's complaint was filed in September 2019 and requested damages from Boyle based on breach of contract,

unjust enrichment, and quantum meruit. The complaint also sought to foreclose the construction lien. Boyle counterclaimed, alleging breach of contract, misrepresentation, and violation of Nebraska's Uniform Deceptive Trade Practices Act (UDTPA).

A jury trial was held on most of the claims and counterclaims, and a simultaneous bench trial was held on the lien foreclosure and UDTPA claim. We summarize the trial proceedings only to the extent necessary to address the assignments of error raised on appeal.

## 1. Proposed Exhibits

During trial and outside the presence of the jury, Boyle's counsel informed the court about "a couple of exhibits we intend to introduce this morning that there's not an agreement on, and we'd like to get some direction from the Court before the jury comes in." Boyle's counsel described two spreadsheets, referred to by the parties as "E319" and "E320," that were created by Boyle and intended as summaries of the evidence regarding damages. This opinion will refer to these as the "proposed exhibits." BCL advised the court that it intended to object to both proposed exhibits on grounds they were inaccurate, misleading, and confusing summaries. After reviewing the proposed exhibits and discussing them with counsel, the court stated that it would allow Boyle to testify about the evidence referenced in the summaries, but that it would not admit either summary into evidence because they were "entirely too confusing" and would allow the jurors to "start looking at things they're not supposed to be looking at." For the same reasons, the court said it would not allow the proposed exhibits to be used for demonstrative purposes during closing argument. During trial, Boyle did not offer either proposed exhibit into evidence or make an offer of proof; nor did she attempt to use the proposed exhibits for demonstrative purposes.

## 2. JURY'S QUESTION

After the case was submitted to the jury for deliberation, the jury submitted a written question asking how to calculate damages if it decided to return a verdict in favor of BCL. The court contacted the attorneys for both parties, and after discussing the jury's question, counsel agreed the court should respond by referring the jury to the written jury instructions already given.

It is undisputed that before the court responded to the jury's question, the jury reached a unanimous verdict in favor of BCL on all issues. The court accepted the verdict without responding to the jury's earlier question, and Boyle did not object to this procedure or move for a mistrial after the verdict was accepted.

## 3. JURY VERDICT AND JUDGMENT

Pursuant to special verdict forms, the jury found in favor of BCL on its breach of contract claim in the amount of $193,037 and against Boyle on her counterclaims for breach of contract and misrepresentation. The district court entered judgment on the verdicts. In a separate order, the district court foreclosed the construction lien and denied Boyle's UDTPA counterclaim.

## 4. PREJUDGMENT INTEREST, ATTORNEY FEES, AND FINAL JUDGMENT

After the jury verdicts were accepted, BCL moved for an award of prejudgment interest and attorney fees. An evidentiary hearing was conducted, and the court sustained both requests.

As to prejudgment interest, the court determined the parties' construction contract was an "instrument in writing" on which money was due, within the meaning of § 45-104. It thus awarded BCL prejudgment interest in the amount of $49,946.34.

As to attorney fees, the court found they were authorized by § 52-157, a provision of the Nebraska Construction

Lien Act (the Act). The Act provides in relevant part that if a person is "wrongfully deprived of benefits to which he or she is entitled" under the Act, then damages awarded "may" include "reasonable attorney's fees."[1] The district court generally reasoned that BCL was "wrongfully deprived" of benefits under the Act because it had to foreclose on its construction lien. It thus awarded BCL attorney fees of $115,473.90.

The court entered a final judgment in favor of BCL in the amount of $193,037 plus costs, with prejudgment interest in the amount of $49,946.34 and attorney fees in the amount of $115,473.90.

## 5. Motion for New Trial

Boyle timely moved for a new trial or, in the alternative, to alter or amend the judgment. She sought a new trial based on the exclusion of proposed exhibits E319 and E320 and on the court's failure to respond to the jury's written question before accepting the verdict. Her motion to alter or amend the judgment challenged the award of attorney fees and prejudgment interest.

The trial court overruled Boyle's motion for new trial and declined to amend the judgment. Boyle filed this timely appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Boyle assigns, restated and consolidated, that the district court erred in (1) refusing to admit proposed exhibits E319 and E320 into evidence or allow them to be used for demonstrative purposes at trial and denying her motion for new trial asserting this issue, (2) failing to respond to the jury's written question before the jury announced its verdict and denying her motion for new trial asserting this issue, (3) awarding BCL prejudgment interest, and (4) awarding BCL attorney fees.

---

[1] § 52-157(1) and (3).

## III. STANDARD OF REVIEW

[1] An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion.[2] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[3]

[2,3] When an attorney fee is authorized by statute or a uniform practice and procedure, the amount of the fee is addressed to the discretion of the trial court.[4] However, whether a statute or a uniform course of procedure authorizes attorney fees presents a question of law.[5]

[4] On appeal, awards of prejudgment interest are reviewed de novo.[6]

## IV. ANALYSIS

### 1. Alleged Trial Errors Not Preserved

#### (a) Proposed Exhibits

Boyle's first assignment of error asserts that the court abused its discretion by excluding proposed exhibits E319 and E320. As noted, during a conference outside the presence of the jury, Boyle's counsel requested "direction from the Court" regarding the admissibility of these proposed exhibits and the court advised that it would not accept them into evidence but would allow Boyle to testify about the information they contained. Boyle's arguments on appeal characterize this as a final ruling on their admissibility. It was not.

---

[2] *Carson v. Steinke, ante* p. 140, 989 N.W.2d 401 (2023).

[3] *Id.*

[4] *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021); *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020).

[5] See *Echo Group v. Tradesmen Internat.*, 312 Neb. 729, 980 N.W.2d 869 (2022).

[6] *Id*.; *Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019).

It is apparent from the record that the purpose of the conference outside the presence of the jury was to request a preliminary ruling on the admissibility of the proposed exhibits prepared by Boyle. The parties disagreed as to admissibility, and although neither party filed a written motion in limine, Boyle's request for "some direction from the Court before the jury comes in" was akin to an oral motion in limine and we analyze it as such.

[5-8] Indeed, we have encouraged courts and counsel to resolve questions regarding the prospective use of summary exhibits during a pretrial conference.[7] But a motion in limine is merely a procedural step by which a court makes a preliminary determination on the admissibility of evidence.[8] It is not the office of such motion to obtain a final ruling on the ultimate admissibility of evidence.[9] And because a ruling on a motion in limine is not a final ruling on admissibility, it does not present a question for appellate review.[10] Instead, to be preserved for appellate review, the question of admissibility which was the subject of a motion in limine must be raised during trial by an appropriate objection or offer of proof.[11]

Here, Boyle did not offer either E319 or E320 during trial; nor did she make an offer of proof or attempt to use either one for demonstrative purposes during trial. She thus never requested or obtained a final ruling on the admissibility of these proposed exhibits during trial, and she cannot predicate trial error on the court's preliminary rulings.[12] Nor, under the

---

[7] See *Crowder v. Aurora Co-op Elev. Co.*, 223 Neb. 704, 720, 393 N.W.2d 250, 261 (1986) ("we encourage courts and counsel to resolve any questions regarding prospective use of a summary [exhibit under Neb. Evid. R. 1006] at a pretrial conference").

[8] See *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019).

[9] See *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017).

[10] See *id.*

[11] See *id.* See, also, *State v. Vaughn, ante* p. 167, 989 N.W.2d 378 (2023).

[12] See *O'Brien, supra* note 9.

circumstances, can she rely on the court's preliminary ruling to support a motion for new trial.[13] Because Boyle never offered the proposed exhibits at trial, she has not preserved their admissibility for appellate review, and her first assignment of error has no merit.

### (b) Jury Question

For her second assignment of error, Boyle argues the court abused its discretion by accepting the jury verdict without first responding to the jury's written question. As noted, while deliberating, the jury sent a written question to the court asking how to calculate damages if it decided to return a verdict in favor of BCL. After consultation with counsel for both parties, the parties agreed the court should respond by referring the jury back to the written instructions already given. But before any such response was delivered to the jury, it reached a unanimous verdict, which the court accepted.

[9-11] The decision whether to reply to questions from the jury regarding the applicable law is entrusted to the discretion of the trial court.[14] It is generally not an abuse of discretion to respond by referring the jury to written instructions already given,[15] but we have also noted "[a] court can, in the exercise of its discretion, refuse to reply to questions from the jury regarding the applicable law."[16]

It appears from the record that the court planned to respond to the jury's question by referring it to the written

---

[13] See, generally, *Connor v. State*, 175 Neb. 140, 120 N.W.2d 595 (1963) (party seeking new trial on ground of erroneous admission of evidence must have timely objected at trial). See, also, *Smith v. Colorado Organ Recovery Sys.*, 269 Neb. 578, 694 N.W.2d 610 (2005) (no abuse of discretion to overrule motion for new trial based on errors alleged to have occurred during trial but not objected to).

[14] *State v. Gutierrez*, 272 Neb. 995, 726 N.W.2d 542 (2007), *disapproved on other grounds, State v. Britt*, 293 Neb. 381, 881 N.W.2d 818 (2016). Accord *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995).

[15] See *State v. Neujahr, supra* note 14.

[16] *Id.* at 974, 540 N.W.2d at 573.

instructions already given, but once the jury reached a unanimous verdict, the court exercised its discretion not to reply to the question at all. The court's reasoning in this regard is not reflected in our record. But whatever its reasoning, Boyle did not make a timely objection to the procedure followed by the court in regard to the jury's question, and she thus has waived the right to challenge that procedure on appeal.[17] Moreover, we cannot find it was an abuse of discretion for the court to deny Boyle's motion for new trial, which was premised on a belated challenge to a discretionary trial procedure to which Boyle never objected.[18] Boyle's second assignment of error has no merit.

## 2. Prejudgment Interest

In her third assignment of error, Boyle challenges the award of prejudgment interest. The district court awarded prejudgment interest pursuant to § 45-104, which provides:

> Unless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing, or on settlement of the account from the day the balance shall be agreed upon, on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, and on money loaned or due and withheld by unreasonable delay of payment. Unless otherwise agreed or provided by law, each charge with respect to unsettled accounts between parties shall bear interest from the date of billing unless paid within thirty days from the date of billing.

[12] We have explained that this statute applies to four types of judgments: (1) money due on any instrument in writing; (2) settlement of the account from the day the balance shall be agreed upon; (3) money received to the use of

---

[17] See *Gutierrez, supra* note 14.

[18] See, *Smith, supra* note 13; *Connor, supra* note 13.

another and retained without the owner's consent, express or implied, from the receipt thereof; and (4) money loaned or due and withheld by unreasonable delay of payment.[19] Here, the district court determined the parties' construction contract is an instrument in writing on which money was due. We agree.

In *Echo Group v. Tradesmen Internat.*,[20] we considered the plain meaning of "any instrument in writing" for purposes of § 45-104. We noted that although "instrument" has several common meanings, the definition, "specific to the legal realm, is '[a] formal legal document entailing rights and obligations, such as a contract, deed, legislative act, etc.; any document formally drawn up so as to have legal effect.'"[21] This definition is consistent with prior Nebraska cases holding that contracts such as lease agreements[22] and escrow agreements[23] are instruments in writing within the meaning of § 45-104, and it supports the district court's determination that the construction contract between BCL and Boyle is an instrument in writing under § 45-104.

[13] The construction contract is a formal legal document entailing the parties' rights and obligations, including Boyle's obligation to make payments to BCL. As such, we agree with the district court that the construction contract is an instrument in writing on which money was due, entitling BCL to an award of prejudgment interest under § 45-104.

[14] On appeal, Boyle does not dispute that the construction contract is an instrument in writing under § 45-104. Instead, she argues there was no "money due" on the instrument

---

[19] *Echo Group, supra* note 5; *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020).

[20] *Echo Group, supra* note 5.

[21] *Id*. at 747-48, 980 N.W.2d at 885.

[22] *Prudential Ins. Co. v. Greco*, 211 Neb. 342, 318 N.W.2d 724 (1982).

[23] *Valley Cty. Sch. Dist. 88-0005 v. Ericson State Bank*, 18 Neb. App. 624, 790 N.W.2d 462 (2010).

because she disputed both the amount owed under the contract and BCL's right to recover. But it is immaterial whether Boyle disputed the amount or recoverability of money due on the contract, because under § 45-104, there is no requirement that the claims described therein also be liquidated to recover prejudgment interest.[24] In other words, money due on an instrument in writing need not also be liquidated to support prejudgment interest under § 45-104.[25] And given the jury's verdict in favor of BCL, we soundly reject Boyle's contention that the construction contract is not an instrument in writing on which money was due.

The district court correctly concluded that BCL was entitled to an award of prejudgment interest under § 45-104 because the construction contract is an instrument in writing on which money was due. Although the parties also advance other theories on appeal both supporting and opposing an award of prejudgment interest, we do not address such arguments because an appellate court is not obligated to engage in analysis that is not necessary to adjudicate the case and controversy before it.[26] Nor do we address BCL's arguments regarding the amount of the prejudgment interest award, as it has not cross-appealed on that issue.

### 3. Attorney Fees

For her final assignment of error, Boyle argues the court erred in awarding attorney fees pursuant to § 52-157 of the Nebraska Construction Lien Act. As we explain, this assignment has merit.

[15] As a general rule, attorney fees may be recovered in a civil action only where provided for by statute or when a

---

[24] See, *Echo Group, supra* note 5 (noting that when claim is of type enumerated in § 45-104, prejudgment interest may be recovered without regard to whether claim is also liquidated); *Weyh v. Gottsch, supra* note 6.

[25] See *id.*

[26] *State v. Brown*, 310 Neb. 318, 965 N.W.2d 388 (2021).

recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[27] The district court concluded that BCL was entitled to an award of attorney fees under § 52-157. That statute provides, in relevant part, that if a person is "wrongfully deprived of benefits to which he or she is entitled" under the Act, then damages awarded may include "reasonable attorney's fees."[28]

[16] Section 52-157 thus authorizes an award of damages, which may include attorney fees, if a person is wrongfully deprived of benefits to which he or she is entitled under the Act. But as we recently explained in *Echo Group*, § 52-157 does not authorize attorney fees in every action involving foreclosure of a construction lien, nor does it authorize an attorney fee award to every prevailing party in an action under the Act.[29]

At the time the district court awarded BCL attorney fees under § 52-157, we had not yet released our opinion in *Echo Group*, but the holding in that case is dispositive here. In *Echo Group*, we construed the statutory requirement that a person must be "wrongfully deprived" of benefits under the Act to support an award of attorney fees under § 52-157(1). We considered the purpose and intent of the Legislature as ascertained from the plain language of the statute, and we expressly held that § 52-157 does not authorize attorney fees "in every action involving foreclosure of a construction lien."[30] Nor does it authorize an attorney fee award to every prevailing party for any action under the Act.[31] Instead, we held that "wrongful deprivation requires something more than merely having to foreclose on a construction lien."[32]

---

[27] See *Echo Group, supra* note 5.

[28] § 52-157(1) and (3).

[29] *Echo Group, supra* note 5.

[30] *Id*. at 750, 980 N.W.2d at 886.

[31] *Id*.

[32] *Id*. at 751, 980 N.W.2d at 887.

[17] In *Echo Group*, we quoted from a comment in the section of the Uniform Simplification of Land Transfers Act that corresponds to § 52-157; that comment listed examples of the type of "wrongful deprivation" that might support a claim for damages under that section.[33] Those examples include a "false or bad faith determination of damages from a prime contractor's breach which reduces the owner's lien liability," or an "owner or prime contractor [who] furnishes [an] incorrect description of real estate with resultant mistaken recording by [the] claimant."[34] And all of the examples quoted in *Echo Group* have in common some sort of wrongful conduct that effectively prevents a claimant from successfully recording or foreclosing a construction lien and renders the claimant "wrongfully deprived of benefits to which he or she is entitled" under the Act. But as we recognized in *Echo Group*, a contractor who has successfully foreclosed a construction lien and received all the benefits to which he or she was entitled under the Act is not entitled to an award of damages or attorney fees under § 52-157.[35] This is such a case.

BCL successfully foreclosed its construction lien and thereby received all the benefits to which it was entitled under the Act. Under our recent holding in *Echo Group*, neither the fact that BCL had to sue Boyle to foreclose its construction lien, nor the fact that Boyle disputed the amounts due, can establish the type of wrongful deprivation required to support an award of damages and attorney fees under § 52-157.

---

[33] See Unif. Simplification of Land Transfers Act § 5-403, comment 1, 14 U.L.A. 564 (2021).

[34] *Id.*

[35] See *Echo Group, supra* note 5, citing *Tilt-Up Concrete v. Star City/ Federal*, 261 Neb. 64, 73, 621 N.W.2d 502, 510 (2001) (holding that because contractor received "all of the benefits to which this court determined it was entitled" under Act, contractor could not state claim for damages under § 52-157).

Wrongful deprivation under § 52-157 requires something more than merely having to foreclose on a construction lien,[36] and BCL has not pointed us to anything else in the record to establish wrongful deprivation and support an award of damages and attorney fees under the Act. Because there is no statute or uniform course of procedure that allows recovery of attorney fees on this record, we must vacate the district court's award of attorney fees.

## V. CONCLUSION

For the foregoing reasons, we vacate the attorney fee award of $115,473.90 and otherwise affirm the judgment of the district court.

AFFIRMED IN PART, AND IN PART VACATED.

---

[36] *Echo Group, supra* note 5.