Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/14/2026 09:08 AM CDT

Charles L. Jeffers, appellee, v.
Lynne R. Jeffers, appellant.

___ N.W.3d ___

Filed April 14, 2026.    No. A-25-309.

1. **Divorce: Child Custody: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Judgments: Motions for New Trial: Appeal and Error.** An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Evidence: Appeal and Error.** When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

5. **Alimony: Words and Phrases.** "Alimony in gross," or "lump-sum alimony," is fundamentally the award of a definite sum of money; and if the sum is payable in installments, the payments run for a definite length of time. The sum is payable in full, regardless of future events such as the death of the husband or the remarriage of the wife.

6. **Alimony: Time.** The reasonable duration of an alimony award depends on the specific facts in a given case, often the amount of time required to allow the recipient spouse to support himself or herself.

7. **Alimony.** The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate.

8. **Alimony: Appeal and Error.** In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or a just result.

9. **Property Division.** Equitable property division under Neb. Rev. Stat. § 42-365 (Reissue 2016) is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and determine the parties' marital liabilities. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

10. **Divorce: Property Division.** Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.

11. **Divorce: Property Division: Proof.** The burden of proof rests with the party claiming that the property is nonmarital.

12. **Divorce: Property Division.** Appreciation, be it active or passive, in the marital interest is always marital; it is simply part of the marital property.

13. ____: ____. Separate property can become marital property through active appreciation.

14. **Property Division: Proof.** The burden of proving an asset has appreciated is on the party seeking to share in it.

Appeal from the District Court for Hayes County: Patrick M. Heng, Judge. Affirmed.

Samantha J. Merrill and Bradley D. Holbrook, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellant.

Jack W. Besse, of Parker, Grossart & Bahensky, L.L.P., for appellee.

Riedmann, Chief Judge, and Bishop and Welch, Judges.

Riedmann, Chief Judge.

## INTRODUCTION

Lynne R. Jeffers appeals the order of the district court for Hayes County dissolving her marriage to Charles L. Jeffers (Larry), dividing the marital estate, and awarding her

alimony. Following our review, we affirm the judgment of the district court.

## BACKGROUND

Larry and Lynne were married on September 2, 2007. It was neither party's first marriage, and no children were born from the marriage. Larry filed a complaint for dissolution in January 2023. Trial was held in October 2024, when both parties were over 70 years old. We recount the evidence presented at trial as is relevant to the assigned errors on appeal.

Larry and his father farmed together, and in 1976, they formed Jeffers Farms, Incorporated. Larry, his father, and a relative all owned shares at different times. Eventually, Larry and his two sons, Christopher Jeffers and Cody Jeffers, became the sole shareholders. At the time of the parties' marriage, the total number of outstanding shares in Jeffers Farms was 5,215; Larry owned 3,915 shares, and Christopher and Cody each owned 650 shares.

In 2004, Cody began taking over farm operations while Larry helped with daily chores. From 2004 to 2011, approximately 90 percent of Larry's time was spent helping Lynne prepare for the sale of her premarital property in Lincoln County. Larry testified that once Cody took over farm operations, Larry ceased to be involved with decisions related to crops and animals. He was not involved in making purchases for machinery, equipment, or livestock. Larry was no longer involved with the business and financial decisions of the corporation. Jeffers Farms paid Larry a monthly salary, sometimes characterized on tax returns as rent, and the corporation also furnished Larry and Lynne with a home and paid their living, personal, and vehicle expenses.

In 2009, Larry and Lynne decided that Lynne would stop working. Lynne began providing childcare for Cody's children, though she could not recall if that was part of the discussion when deciding to stop working. Lynne also delivered parts on the farm and cooked. Between 2010 and 2014, Jeffers Farms

made updates and remodels to the corporate-owned homes, including new siding, windows, and a furnace and air conditioning unit. No evidence was presented regarding whether those improvements resulted in an increase in the homes' values, and if so, in what amount. Between 2007 and 2023, no improvements were made to the land other than routine maintenance. In 2013, Cody decided to farm 1,800 acres of land himself, rather than custom hire it out, so the corporation purchased various pieces of equipment to accomplish that. Larry denied any involvement in decisionmaking regarding the purchase of machinery or equipment.

In 2018, Jeffers Farms redeemed Christopher's stock for $30,000. The redeemed stock went back into the corporation, and Larry's total number of shares did not increase. At the time of marriage, Larry's ownership share in Jeffers Farms was 75 percent, but after the redemption, it increased to 86 percent because Christopher's redeemed shares were retired. Larry did not recall how the price for the redemption was determined.

At the time of trial, Lynne had moved to Illinois, was living with her son, and had a part-time job. When asked why she began working part time, Lynne stated that she "needed something to do" and that she "needed help with covering [her] lawyer's fees." Lynne received approximately $2,200 per month in Social Security benefits. She received $229 per month from a retirement benefit and $258 per month as payment on money she had loaned her son. Lynne also had funds in an investment account, though they did not generate a monthly payment.

Larry had issues with his health dating back to 2006, including heart issues, leukemia, and infections from surgeries, which affected his ability to work. He received approximately $1,800 per month in Social Security benefits. At trial, it was unclear whether Jeffers Farms would continue to pay him a monthly salary.

Larry's opinion was that the corporation itself had not increased in value because any increase in value was due to real estate. According to Larry, that increase was a result of "[r]ich

people being scared to put their money anywhere besides land." Cody explained that "Farm Credit Services [required an annual] balance sheet" and that the value of the land was estimated based upon comparable sales. There was a significant change in the real estate value from 2023-24 because it was adjusted to more accurately reflect its value in anticipation of Cody's applying for a loan, which ultimately did not occur. Cody attributed any increase in value to an adjustment based on comparable sales. He denied that any improvements were made to the land during Larry's marriage.

The district court dissolved the parties' marriage and divided the marital estate. It found the increase in the value of the real estate and in Larry's stock in Jeffers Farms was not due to the active efforts of either party, so any increase in value was nonmarital. Lynne was awarded alimony of $1,000 per month for 24 months, and then $500 per month for an additional 24 months. The alimony was ordered to terminate upon the death of either party, Lynne's remarriage, or the expiration of the 48-month term. Following the denial of Lynne's motion for new trial and/or to alter or amend, Lynne appealed.

## ASSIGNMENTS OF ERROR

Lynne assigns, restated, that the district court erred in (1) failing to award her alimony in gross, (2) finding the appreciation on Jeffers Farms was passive and thus nonmarital, and (3) finding the increase in Larry's ownership share of Jeffers Farms was nonmarital.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees. *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022).

[2] An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for

an abuse of discretion. *BCL Properties v. Boyle*, 314 Neb. 607, 992 N.W.2d 440 (2023).

[3] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Simons, supra.*

[4] When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024).

## ANALYSIS

*Alimony in Gross.*

Lynne assigns that the district court erred by failing to award her alimony in gross. We find no abuse of discretion in the alimony award.

[5] Neb. Rev. Stat. § 42-365 (Reissue 2016) provides, in part: "Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient." "Alimony in gross," or "lump-sum alimony," is fundamentally the award of a definite sum of money; and if the sum is payable in installments, the payments run for a definite length of time. *Ball v. Ball*, 183 Neb. 216, 159 N.W.2d 297 (1968). The sum is payable in full, regardless of future events such as the death of the husband or the remarriage of the wife. *Id*.

In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Scott v. Scott*, 319 Neb. 877, 25 N.W.3d 439 (2025). In addition to the specific criteria listed in § 42-365, a court should consider the income

and earning capacity of each party and the general equities of the situation. *Scott, supra*.

[6-8] The reasonable duration of an alimony award depends on the specific facts in a given case, often the amount of time required to allow the recipient spouse to support himself or herself. *Karas v. Karas*, 314 Neb. 857, 993 N.W.2d 473 (2023). The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Scott, supra*. In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or a just result. *Id*. The ultimate criterion is one of reasonableness. *Id*. An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Id*.

Lynne argues an award of alimony in gross is appropriate given her artificially low living expenses, her inability to meaningfully increase her earning capacity, and Larry's serious health issues. She did not request alimony in gross during the trial; rather, she raised the issue through her motion for new trial and/or to alter or amend. Our review is for an abuse of discretion.

At the time of dissolution, both parties were in their seventies. During the marriage, Jeffers Farms provided housing and paid for the parties' living expenses. Larry and Lynne both received Social Security benefits. Lynne also received monthly payments from a retirement benefit and an outstanding loan, and she had funds in an investment account. Although Larry had received a monthly salary from Jeffers Farms during the marriage, the testimony at trial was unclear as to whether that would continue. Larry had health issues that limited his ability to work. At the time of trial, Lynne was working a part-time job, in part because of her attorney fees.

In its decree of dissolution, the district court ordered Larry to pay $5,000 toward Lynne's attorney fees.

Neither party is supporting minor children, and both have issues with continuing full-time employment due to age and/or health. The parties each have additional sources of income aside from what Jeffers Farms provided during the marriage. Part of the reason Lynne sought employment was to pay her attorney fees, and Larry was ordered to pay $5,000 toward those fees. These should not be ongoing expenses. Based on the circumstances of the parties and the general equities of the situation, we cannot say the award was an abuse of discretion. This includes the decision to order the alimony to terminate upon the death of either party, Lynne's remarriage, or the expiration of the 48-month term.

We acknowledge that the Nebraska Supreme Court has stated that serious health problems experienced by either party may support an award of alimony that does not terminate pursuant to the default provision of § 42-365. See *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002). However, when reviewing an alimony award, we determine whether the award is untenable such as to deprive a party of a substantial right and a just result. See *Scott v. Scott*, 319 Neb. 877, 25 N.W.3d 439 (2025). Having reviewed the record, we cannot say the district court abused its discretion in declining to award Lynne alimony in gross. This assignment of error fails.

*Jeffers Farms.*

[9] Lynne assigns that the district court erred in finding the appreciation in Jeffers Farms was passive and thus nonmarital. We disagree. To begin our analysis, we recite the familiar framework for dividing a marital estate. Equitable property division under § 42-365 is a three-step process. *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024). The first step is to classify the parties' property as marital or nonmarital. *Id*. The second step is to value the marital assets and determine the parties' marital liabilities. *Id*. The third step is to calculate and divide

the net marital estate between the parties in accordance with the principles contained in § 42-365. *Stava, supra*.

[10,11] Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Id*. The burden of proof rests with the party claiming that the property is nonmarital. *Id*. The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact. *Id*. The manner and method of acquisition involve questions of fact, but the classification of the property under those facts is a legal question and not a matter of the court's discretion. *Id*. The second step, valuation, involves questions of fact, and the third step, dividing the marital estate in accordance with the principles of § 42-365, is a matter of discretion. *Stava, supra*.

[12] All property accumulated and acquired by either spouse during the marriage is, as a general rule, part of the marital estate. *Id*. The manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's ability to determine how the property should be divided in an action for dissolution of marriage. *Id*. Appreciation, be it active or passive, in the marital interest is always marital; it is simply part of the marital property. *Id*.

In contrast, property that a party brings into the marriage is usually excluded from the marital estate. *Id*. The Supreme Court has said that the equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as separate property. See *id*. This includes its passive appreciation. *Id*.

[13] Separate property can become marital property through active appreciation. See *id*. Active appreciation converts to marital property only the increase in a nonmarital asset's value due to a contribution of marital funds or efforts. *Id*. This is opposed to passive appreciation, which is appreciation caused by separate contributions and nonmarital forces. *Id*.

This issue involves the first step of the process and requires us to determine whether any increase in the value of Jeffers Farms was due to the active efforts of Larry or Lynne. This step is complicated by the fact that Lynne relies solely upon the corporation's balance sheet summaries from 2010 and 2024 to determine the corporation's value and its alleged appreciation. See *McReynolds v. McReynolds*, 33 Neb. App. 733, 24 N.W.3d 906 (2025) (recognizing to determine value of closely held corporation, trial court may consider nature of business, corporation's fixed and liquid assets at actual or book value, corporation's net worth, marketability of shares, past earnings or losses, and future earning capacity; method of valuation must have acceptable basis in fact and principle).

Lynne argues that the 2010 balance sheet summary reflects a total equity of $2,242,360 and directs this court to the 2024 balance sheet, which reflects a total equity of $9,757,289. She uses the difference between these amounts as the appreciated value of the corporation. Lynne then compares the percentage of shares Larry owned at the time of the marriage versus the percentage owned in 2024 to determine what she alleges is the increase in Larry's interest in the corporation.

The balance sheet summaries reflect a real estate value of $2,402,285 in 2010 and a value of $8,025,725 in 2024. This accounts for $5,623,440 of the increased value, leaving the remaining amount attributable to other assets. However, the majority of the testimony focused on the increase in the value of the real estate, although Cody testified that the corporation purchased equipment so he could farm some of the land. No testimony was provided to explain the assets that comprised the remaining increase or how they were valued.

In its order, the district court identified the "major issue" as the treatment of the real estate. It concluded that any appreciation in the land was passive and awarded it to Larry as nonmarital property. It summarily determined that Larry's interest in his revocable trust and in Jeffers Farms was nonmarital and awarded it to him.

The evidence at trial established that when Cody returned to the farm in 2004, Larry ceased to be involved with decisions regarding crops, cattle, and the business and financial aspects of the corporation. Although certain updates were made to the corporate homes and general maintenance was performed on the land during the marriage, there were no significant improvements made to the real estate that support a finding of active appreciation. As noted above, the value of Jeffers Farms' real estate as contained in annual balance sheets increased from 2010 to 2023, but Cody attributed this as a reflection of comparable sales in the county. Lynne testified that she contributed to the corporation by cooking, delivering parts, and providing childcare for Cody's children. Cody disputed that Lynne provided help for the corporation.

Lynne argues that there were active efforts to increase Jeffers Farms' value during the marriage, including the updates to the corporate homes, the childcare she provided, and certain appliances she installed in the corporate home at the time of marriage. Lynne argues that Jeffers Farms purchased new equipment and that this was an active effort made to increase the corporation's value.

[14] Other than the balance sheets, there is little evidence regarding the value of Jeffers Farms beyond the real estate. Neither party valued the corporation beyond the net equity stated on the balance sheet summaries. Larry denied the corporation had increased in value beyond the appreciation in the real estate. Just as the burden of proving the existence of a debt is on the party who seeks to divide it, we hold that the burden of proving an asset has appreciated is on the party seeking to share in it. See *White v. White*, 320 Neb. 256, 26 N.W.3d 924 (2025) (affirming district court's determination that husband failed to prove continued existence of debt he sought to have divided). See, also, 1 Brett R. Turner, Equitable Distribution of Property § 5:3 at 421 (4th ed. 2025) ("[t]he burden of proving that interest exists on the facts is always on the spouse who seeks to have the interest divided").

The burden to prove that the appreciation is nonmarital, however, remains on the person claiming its separate status. See *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017). The district court here made no determination of the corporation's value, nor its appreciation, if any, beyond the value of the real estate it held.

Although we question whether Lynne met her burden of proof that the corporation appreciated beyond the value of its real estate, we find no abuse of discretion in the district court's order awarding Jeffers Farms to Larry as nonmarital property. We agree with the district court that the items Lynne claimed she personally performed do not constitute active efforts by her to increase the value of the corporation and that operational decisions regarding the corporation were made by Cody, not Larry.

We recognize that the evidence was in conflict; however, choosing which evidence to believe was a credibility determination made by the district court. Lynne admits in her brief that Larry "was largely retired" at the time certain acquisitions were made but contends "there is no evidence in the record saying that he had no say or part in the discussion to take the company down this new path and incur a large amount of debt." Brief for appellant at 24. However, the district court stated that "Larry's testimony is credible regarding his noninvolvement in Jeffers Farms." It found that "[t]he efforts that Lynne testified to were not involved in aiding this increase" in the real estate. We are mindful that when evidence is in conflict, we consider and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. See *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024).

Assuming Lynne proved the corporation had appreciated, Larry bore the burden to establish that any increase in value of Jeffers Farms was due to passive appreciation, and the district court found he met that burden. The district court did not err in this determination. Lynne has failed to show the district

court abused its discretion in classifying the appreciation in Jeffers Farms as nonmarital property. See *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). This assignment of error fails.

*Ownership Increase in Jeffers Farms.*

Lynne argues that the district court erred in finding that the increase in the ownership share of Jeffers Farms was nonmarital. We disagree. As discussed above, separate property can become marital property through active appreciation. See *Stava, supra*. If the increase in the ownership share of Jeffers Farms was due to the active efforts of Larry or Lynne, then it is part of the marital estate.

At the time of the marriage, Larry owned 75 percent of Jeffers Farms' shares, and after the 2018 stock redemption, this increased to 86 percent. Larry could not recall exactly how the decision to redeem Christopher's shares was made. However, the evidence established that when the redemption occurred in 2018, Larry had not been involved in the business and financial aspects of the corporation for several years. Rather, Cody had "taken over."

The Supreme Court has recognized, "Despite the importance of each employee in a company, a company's value for purposes of active appreciation is attributable only to the efforts of first-tier management or similar persons with control over the asset's value." *Stephens v. Stephens*, 297 Neb. 188, 207, 899 N.W.2d 582, 596 (2017). We find this would be equally applicable to an increase in ownership of a company, when the increase is not the result of decisions made by either the husband or the wife. The evidence supports a finding that Larry was not operating in the position of first-tier management when the decision regarding Christopher's stock was made. Therefore, the increase in the percentage of Larry's ownership in Jeffers Farms, which resulted from the retirement of Christopher's stock, was not due to the active efforts of Larry.

Lynne does not contend that the increase in Larry's ownership of the corporation's stock was due to any active efforts by her; rather, she claims that because Larry knew how the redemption price was set and because corporate profits "earned throughout the course of the marriage" were used to purchase the stock, the resulting increase was marital property. Brief for appellant at 26. We disagree. Knowledge of how or why a decision was made does not equate to making the decision itself. As set forth above, the evidence was sufficient to support a determination that the retirement of Christopher's stock, which resulted in an increase in Larry's ownership, was not Larry's decision.

Nor do we find that the use of corporate funds to purchase the stock mandates a finding that the increased ownership was marital. The undisputed evidence is that Cody was making the financial decisions for the corporation and that the majority of the corporation's increased value was due to passive real estate appreciation. We reject Lynne's classification of corporate profits as marital property. Despite Larry's majority ownership in the corporation, he relinquished any corresponding authority to Cody. Therefore, we find no error in the district court's determination that the increase in Larry's ownership, even with the use of corporate funds, did not result in marital property.

This assignment of error fails.

## CONCLUSION

The district court did not abuse its discretion in its award of alimony or in its determination that Jeffers Farms and the increase in Larry's ownership shares of the corporation were nonmarital property. We affirm the decree of the district court.

AFFIRMED.